

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
01/27/2016

| | | |
|---|---|---|
| IN RE: | § | |
| OSCAR PALACIOS, *et al* | § | CASE NO: 14-70076 |
|     Debtors | § | |
| | § | CHAPTER 7 |
| | § | |
| | § | JUDGE RODRIGUEZ |

**MEMORANDUM OPINION
DENYING APPLICATION FOR APPROVAL OF EMPLOYMENT OF LEZZLIE E.
HORNSBY, ESQ. AS SPECIAL COUNSEL FOR THE TRUSTEE NUNC PRO TUNC
AND STRIKING APPLICATION FOR ALLOWANCE OF TRUSTEE'S SPECIAL
COUNSEL'S FEES AND EXPENSES
[Resolving ECF Nos. 57 and 58, Addressing ECF No. 37]**

## I. Introduction

Unfortunately, this is a case of "no good deed go[ing] unpunished."[1]  This Court

conditionally approved the Motion for Approval of Compromise and Settlement Agreement (the

"***Compromise***") filed by Michael B. Schmidt ("***Schmidt***"), the current chapter 7 Trustee, in

which Maria Palacios (the "***Joint Debtor***") was represented by an attorney, absent approval from

this Court pursuant to 11 U.S.C. § 327, in a class action products liability case.  Schmidt asked

this Court to approve the underlying settlement, which had already been accepted by the Joint

Debtor, permit payment of the class action attorney's fees, accept the net proceeds into the

bankruptcy estate, and authorize Schmidt to provide any settlement-related releases that may be

required.  In addition to the Compromise, Schmidt has consented to the Application for Approval

of Employment of Lezzlie E. Hornsby, Esq. as Special Counsel for the Trustee *Nunc Pro Tunc*.

---

[1] *Ferguson v. City of Charleston*, 532 U.S. 67, 104 (2001) (Scalia, J., dissenting); *U.S. v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 387 (5th Cir. 2012) (Clement, J., dissenting).

[Case No. 14-70076, ECF No. 57].  Ms. Hornsby, in her role as prospective Special Counsel, has also filed an Application for Allowance of Trustee's Special Counsel's Fees and Expenses, [ECF No. 58], that provides a detailed request of the fees and expenses related to the representation of the Joint Debtor in the class action litigation.  This Court takes up each of the pending motions, further explains the reasons for the conditional approval of the Compromise, and addresses the final resolution of the Compromise.

## II.  Findings Of Fact

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rules of Bankruptcy Procedure 7052, which incorporates Fed. R. Civ. P. 52.  To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

1.    On January 31, 2014, Oscar and Maria Palacios (hereinafter, collectively the "***Debtors***") filed their voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "***Bankruptcy Code***" or "***Code***"),[2] initiating Case No. 14-70076.  [ECF No. 1].

2.    On November 29, 2012, prior to the filing of their present bankruptcy, Debtors retained Clark, Love & Hutson, G.P., Lee Murphy Law Firm, G.P., and Tracey Law Firm in relation to a class action claim against American Medical Systems, Inc.  [ECF No. 57 ¶ 10]; *see also* Ex. 2.

3.    In the initial Schedules B and C, filed January 31, 2014, Debtors claimed a plethora of personal property, but did not list the pre-petition class action claim.  [ECF No. 1 at 9-12].  The Debtors also claimed federal exemptions pursuant to 11 U.S.C. § 522.  *Id.* at 13-14.

4.    On March 21, 2014, the First Meeting of Creditors was scheduled to take place.

---

[2] Any reference to "***Code***" or "***Bankruptcy Code***" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

[ECF No. 14].  The meeting was successfully held and concluded.

5.      On March 24, 2014, William C. Romo, the Chapter 7 (hereinafter "**Romo**"), issued a Trustee's Report, which stated that there was "no property available for distribution from the estate over and above that exempted by law."

6.      On May 21, 2014, this Court issued an Order Discharging Chapter 7 Debtors, [ECF No. 19], and entered a Final Decree,  [ECF No. 20], thus ending Debtors' bankruptcy case.

7.      On March 17, 2015, Romo filed a Motion to Withdraw Document that referenced the previously filed Chapter 7 Trustee's Report.  [ECF No. 23].  This Court subsequently granted the Motion to Withdraw Document on April 10, 2015.  [ECF No. 25].

8.      On March 25, 2015, Romo filed a Motion to Reopen Chapter 7 Case, due to the alleged need "to pursue a potential settlement on a personal injury claim which was not disclosed on debtor's schedules or statement of financial affairs."  [ECF No. 24].  This Court granted the Motion to Reopen Chapter 7 on April 17, 2015.  [ECF No. 27].

9.      On April 20, 2015, Debtors filed Amended Schedules B and Schedule C.  [ECF No. 29].  The Amended Schedule B declared, for the first time, that Debtors were plaintiffs in a multi-district litigation action with a scheduled claim of $87,968.00.  *Id.* at 3.  Furthermore, the Joint Debtor claimed that "[f]rom the time she retained counsel in 2012 until settlement of claims in 2015, [Joint Debtor] asserts that she was unaware of any development in the case or that she had a viable claim."  *Id.*  Debtors further stated that they "signed a settlement agreement after finally being provided all requested documents…"  *Id.*  In addition to the extra personal property declared in the Amended Schedule B, Debtors also declared an exemption of $22,975.00 from the settlement in their Amended Schedule C.  *Id.* at 7.

10.     Simultaneously on April 20, 2015, the United States Trustee filed a Notice of

Appointment of Successor Trustee that substituted Schmidt for Romo as Chapter 7 Trustee. [ECF No. 30].

11.     Schmidt filed a Trustee's Notice of Assets & Request for Notice to Creditors that required proofs of claims to be submitted by September 14, 2015 and notified creditors that the case had changed from a "no asset" case, as previously indicated, to a case where a dividend may be paid.  [ECF No. 32].

12.     There is approximately $40,915.18 in allowed General Unsecured Claims.

13.     On October 5, 2015, Schmidt, filed an Application to Compromise Controversy (the "*Compromise*").  [ECF No. 37].  The Compromise requests that this Court grant Schmidt "authority to accept the settlement that has *already* occurred and in turn be authorized to accept the *net settlement proceeds* into the bankruptcy estate." *Id.* at ¶ 5 (emphasis added). Furthermore, Schmidt requests that he "be authorized to provide any post-settlement releases that may be sought from the estate pertaining to the settlement." *Id.*

14.     In Exhibit A to the Compromise, Schmidt provides a detailed settlement statement from Clark, Love & Hutson, GP, the law firm retained by the Joint Debtor for her class action claim. [ECF No. 37 at 4].  The statement provides the following breakdown:

| | |
|---|---|
| Gross Settlement Award | $ 87,968.00 |
| Less Attorney's Fees (40% of Gross Settlement) | ($35,187.20) |
| Less Case Expenses | |
|    MDL Fee (1% of Gross Settlement per Court Order) | ($879.68) |
|    Common Expenses (pro rata share) | ($149.47) |
|    Clark, Love & Hutson, GP | ($1093.84) |
|    Les Murphy Law Firm | ($22.83) |
|    Tracey Law Firm | ($480.26) |
|             Total Case Expenses | ($2,626.08) |
| Settlement Award Balance | $50,154.72 |
| Less Expenses and/or Liens Due from Client Funds    Bankruptcy Coordination Fee | ($500.00) |
| Amount Due to Client | $49,654.72 |

*Id.* (summarizing attorney's fee calculations: 40% overall, 36% attorney's fees, and 4% MDL fee); *see also* ECF No. 58, at 1, 2; Ex. 1.

15.     On December 16, 2015, this Court conducted an evidentiary hearing on the Compromise (the "***Hearing***").  At the Hearing, Schmidt presented the following arguments on the merits of the compromise:

    a.   Schmidt's Evidence:

        i.     Ex. 1: AMS Settlement Statement dated September 30, 2015.

        ii.    Ex. 2: AMS Disclosure and Settlement Offer dated January 19, 2015.

        iii.   Both Exhibits were admitted.

    b.   Arguments:

        i.     In his arguments before this Court, Schmidt stated that there had been no objections to the Compromise.

        ii.    The Compromise was the result of approximately 57,000 claims across the nation in multi-district litigation ("***MDL***").

        iii.   The net settlement to the bankruptcy estate is $49,654.72 after attorney's fees and related expenses have been paid.

        iv.    In responding to this Court's question about the lack of approval of special counsel by this Court, Schmidt stated that his understanding was that Romo, the preceding chapter 7 trustee, had been notified by Clark, Love & Hutson, G.P. of the pending settlement upon learning that Joint Debtor was in bankruptcy.

        v.     Schmidt further stated that the Compromise was an attempt to skip the process of hiring special counsel.

vi.   This Court questioned Schmidt regarding the holding of *Lamie v. United States Trustee*, 540 U.S. 526 (2004), and how, absent proper employment, the Compromise could include payment of attorney's fees. Schmidt stated that he could file a *nunc pro tunc* application to employ, but Ms. Lezzlie Hornsby, of Clark, Love & Hutson, G.P., offered to draft the application to avoid additional costs to the bankruptcy estate. This Court subsequently cautioned Schmidt and Ms. Hornsby that such application would need to be prepared in compliance with the Southern District of Texas Local Rules and this Court's Procedures.

16.   The Compromise:

i.   This Court approved the Compromise at the Hearing, subject to the condition that no funds be paid to Ms. Hornsby or Clark, Love & Hutson, G.P. until such time as a *nunc pro tunc* application was filed *and* approved.  [ECF No. 52].

ii.   Schmidt subsequently filed a Motion to Clarify Order Approving Settlement Agreement (Document #52) that sought clarification that this Court's approval of the settlement also included an approval of the MDL fee being deducted from the gross settlement, which this Court clarified in a subsequent order.  [ECF No. 54 and 55].

17.   On January 8, 2016, Ms. Hornsby, with the consent of Schmidt, filed an Application For Approval of Employment of Lezzlie E. Hornsby, Esq. as Special Counsel For the Trustee *Nunc Pro Tunc* (the "***Application to Employ***"), pursuant to 11 U.S.C. §§ 327(e) and 328(a), and in accordance with Fed. R. Bankr. P. 2014.  [ECF No. 57].

18.     Simultaneously on January 8, 2016, Ms. Hornsby filed an Application for Allowance of Trustee's Special Counsel's Fees and Expenses (the "***Fee Application***").  [ECF No. 58].  The Fee Application requested, as had been previously submitted in the Compromise, contingency fees of $31,668.48, bankruptcy coordination fees of $500.00, and expenses in the amount of $1,746.40.  *Id.* at 1.  The Fee Application also included the MDL fee of $4,398.40 in the itemized list.

### III.  Legal Standard

In the matter at bar, there are three issues before this Court.  First, this Court must address the Compromise, which has been conditionally accepted by this Court, and the reasons for such acceptance pursuant to the Code.  Second, this Court must evaluate whether the Application to Employ meets the requirements under the Code, Local Rules, and case law for *nunc pro tunc* approval.  Third, this Court must question whether the Fee Application, which itself is an embodiment of the provision of the Compromise for payment of attorney's fees to Ms. Hornsby, may be granted under the provisions of the Code.

Fed. R. Bankr. P. 9019 is a bankruptcy court's basis for acceptance of a compromise. Rule 9019 has two provisions pertaining to potential compromises, which states that:

> (a) Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

> (b) Authority To Compromise or Settle Controversies Within Classes. After a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice.

Fed. R. Bankr. P. 9019(a)-(b).  In addition to the provisions of Rule 9019, the Fifth Circuit has provided guidance on what qualifies as "fair, equitable, and in the best interest of the estate."  *In*

*re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *In re Roqumore*, 393 B.R. 474, 479-80 (Bankr. S.D. Tex. 2008); *see also Official Comm. Of Unsecured Creditors v. Cajun Elec. Power. Coop., Inc. (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 356 (5th Cir. 1997). The Fifth Circuit in *In re Cajun Elec. Power Coop.* stated that bankruptcy judges must consider the following factors when evaluating a settlement:

> (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,
>
> (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and
>
> (3) All other factors bearing on the wisdom of the compromise.

119 F.3d at 356; *see also In re Jackson Brewing Co.*, 624 F.2d at 602 (citing to *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson ("**TMT Trailer**")*, 390 414, 425 (1968)). Furthermore, the Fifth Circuit has expanded upon the third factor by adding that courts must consider "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion. *In re Roqumore*, 393 B.R. at 480 (citing to *In re Cajun Elec. Power Coop.*, 119 F.3d at 356, and *In re Foster Mortgage Corp.*, 63 F.3d 914, 917 (5th Cir. 1995)). A court may exercise discretion to determine whether the proposed compromise or settlement warrants approval. *Lindauer v. Traxler (In re Traxler)*, 277 B.R. 699, 702 (Bankr. E.D. Tex. 2002) (citing to *In re Jackson Brewing Co.*, 624 F.2d at 602-03).

The second and third issues are intertwined. Both involve the ability for this Court to accept the Compromise, which provides for the payment of attorney's fees who has filed an

application to employ on a *nunc pro tunc* basis and an application for compensation corresponding to the attorney's fees provision of the Compromise, under the Code.  The payment of attorney's fees may be broken into two separate sub-inquiries: (1) if the attorney has been properly employed and (2) if properly employed, if the fees are reasonable.  There are several sections of the Code that are relevant in determining the propriety of a proposed settlement's payment of attorney's fees.  First, § 327 governs the employment of a professional person and provides that:

> Except as otherwise provided in this section, the *trustee*, with the court's approval, *may employ one or more attorneys*, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (emphasis added).  Section 327 permits the trustee to employ those that they deem fit, subject to approval by the court, even stating that "a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee…"  § 327(c).  However, should a creditor or the United States trustee object to the person's employment, "the court shall disapprove such employment if there is an actual conflict of interest."  *Id.*; *see also* 11 U.S.C. § 328(c).  Section 327(e) provides the trustee with the ability to employ, once again subject to the court's approval, an attorney that has represented the debtor for a special purpose, if such purpose is in the best interest of the estate and only when the attorney "does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  § 327(e); *In re Johnson*, 433 B.R. 626, 636 (Bankr. S.D. Tex. 2010) (discussing different examples of acceptable purposes for special counsel); *see also In re Gelsinger*, 2000 U.S. Dist. LEXIS 1026 (E.D. Pa. Feb. 7, 2000)

(approving special counsel to litigate a pre-petition products liability claim); *United States v. Miller, Cassidy, Larroca & Lewin (In re Warner)*, 141 B.R. 762 (M.D. Fla. 1992) (discussing special counsel for an appeal of a criminal conviction); *In re Statewide Pools, Inc.*, 79 B.R. 312 (Bankr. E.D. Ohio 1987) (representing the debtor for various non-bankruptcy litigation matters, such as collections of accounts receivable).   The court is permitted to deny compensation to an attorney that does "hold such an adverse interest."  *I.G. Petroleum, L.L.C. v. Fenasci (In re W. Delta Oil Co.)*, 432 F.3d 347, 354 (5th Cir. 2005) (discussing the application of § 327(e) and the discretion provided to courts in determining the employment of professionals).   While the court has a great degree of latitude in assessing potential conflicts of interest that are "adverse with respect to the matter on which such attorney is to be employed," the standards require strict adherence by such attorneys, as may be engaged in a bankruptcy case, that they "should be free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate or which might impair the high degree of impartiality and detached judgment expected of them during the course of administration."   *Id.* at 353-55 (internal quotations omitted).

Fed. R. Bankr. P. 2014 provides a list of factors that must be included in an application by a trustee or committee to employ a professional under §§ 327, 1103, or 1114, specifically in that the application state:

> … the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).   The application must also be accompanied by a verified statement from the proposed professional that details "the person's connections with the debtor, creditors,

any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." *Id.* In addition to Rule 2014, Rule 2016 also imposes requirements upon "an entity[3] seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate…" Fed. R. Bankr. P. 2016(a); *see also In re Padilla*, 379 B.R. 643, 654-55 (Bankr. S.D. Tex. 2007) (discussing the application of Rule 2016(a)); *In re Allen*, 215 B.R. 503, 504 (Bankr.N.D.Tex.1997) ("All attorney's fees to be paid by debtors in bankruptcy cases must be approved by the Bankruptcy Court"). Rule 2016 requires that a detailed statement be included with the application that lists "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Rule 2016(a) also requires a statement on the compensation paid in relation to the case, including if information on "an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor…" *Id.* Parties seeking compensation must file applications in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure in order for a court to grant such compensation. *In re Padilla*, 379 B.R. at 659. In addition to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the BLR, this Court has its own rules for the form and content of fee applications, which requires that the professional provide information regarding the compensation requested and distributions to be made by the bankruptcy estate. *See* Court Procedures § 23(i).

For professionals employed pursuant to § 327, compensation may be set "on any

---

[3] "Subdivision (a) is amended to change "person" to "entity." There are occasions in which a governmental unit may be entitled to file an application under this rule." Fed. R. Bankr. P. 2016 advisory committee's note to 1987 amendment.

reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." § 328(a). However, a court "may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." *Id.*

In addition to those attorneys employed pursuant to § 327, the Code also governs the relationship that the debtors have with attorneys outside of the bankruptcy process by providing that:

> Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). The Code also provides a bankruptcy court with the ability to cancel agreements between a debtor and an attorney when "compensation exceeds the reasonable value of any such services" or even order the return of excessive payments to such attorney when the property would have been property of the estate or payment was made by or on behalf of a debtor in chapters 11, 12, and 13. § 329(b)(1)(A)-(B).

Section 330 provides that compensation may be paid to a person employed under § 327, after notice and a hearing, but only for compensation that is reasonable and related to "actual, necessary services rendered by the … attorney and by any paraprofessional person employed by such a person and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A)-(B). The Code provides a methodology for determining what reasonable compensation is by looking

at six non-exhaustive factors:

> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3)(A)-(F).  The provision of reasonable compensation in § 330(a)(3) is subject to the terms of § 330(a)(4), which provides that:

> (A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>> (i) unnecessary duplication of services; or
>> (ii) services that were not—
>>> (I) reasonably likely to benefit the debtor's estate; or
>>> (II) necessary to the administration of the case.
> (B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

§ 330(a)(4).  Section 330(a) also provides several other limitations on reasonable compensation in subsections (5)[4] and (6).[5]  § 330(a)(5)-(6).  Section 330 further provides that the court, *sua sponte*, or via motion from the United States Trustee, trustee for the estate, or other parties in interest, may "award compensation that is less than the amount of compensation that is

---

[4] "The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate."
[5] "Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."

requested." § 330(a)(2).  Section 330(a) compensation is also subject to the limitations of § 504 when representing an administrative expense under § 503(a) or (b).  Section 504(a) prohibits the sharing of compensation or reimbursement, or an agreement thereto, pursuant to § 503(b)(2)[6] & (4)[7] with another person absent qualification under § 504(b) or (c).  *Compare* § 504(a)(1)-(2)[8] *with* § 503(b)(2) & (4); *see also* Fed. R. Bankr. P. 2014 and 2016.  *But see* § 504(b)[9] & (c).[10]

Section 331 provides a non-exhaustive list of professionals, provided that they are employed pursuant to 11 U.S.C. §§ 327 or 1103, that may seek compensation for services rendered in relation to a bankruptcy estate.  § 331.  The section limits the applicant to seeking compensation only once per 120-day period after an order for relief, although the court may grant permission for an applicant to seek compensation on a more often basis.  § 331.  Upon application, the court "may allow and disburse to such applicant" when notice has been provided and a hearing held.  *Id.*

Turning now from the provisions of the Code to case law, the matter of the employment and payment of a professional under the provisions of the Code is well-settled law.  The

---

[6] "(2) compensation and reimbursement awarded under section 330(a) of this title."

[7] "(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant."

[8] "(a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—
　　(1) any such compensation or reimbursement with another person; or
　　(2) any compensation or reimbursement received by another person under such sections."

[9] "(b)
　　(1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.
　　(2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney."

[10] "(c) This section shall not apply with respect to sharing, or agreeing to share, compensation with a bona fide public service attorney referral program that operates in accordance with non-Federal law regulating attorney referral services and with rules of professional responsibility applicable to attorney acceptance of referrals."

Supreme Court discussed the issue of compensation to professionals under § 330 in *Lamie v. United States Trustee*.   540 U.S. 526 (2004).   In *Lamie*, the Court reviewed the propriety of compensation being paid to an attorney, who had been employed by the debtor for their chapter 11 bankruptcy, after the debtor's case had been converted from chapter 11 to a chapter 7 without being employed by the chapter 7 trustee.   *Id.* at 529.   The issue manifested when the attorney, after having provided legal services to the debtor, sought fees under § 330(a)(1), to which the United States Trustee objected.   *Id.* at 532-33.   The Bankruptcy Court denied the fees pursuant to § 327, which the District Court and the Court of Appeals each respectively affirmed.   *Id.*

In reviewing the lower court judgments, the Supreme Court looked first to the provisions of § 330[11] to compare the amendments made in 1994 with the 1988 amendments of the section and noted that the deletion of the "or to the debtor's attorney" was the primary transmutation.   *Id.* at 530-31.   The Court then noted that the deletion rendered the language to state, "the court may award to a trustee, an examiner, a professional person employed under [the relevant sections]," thereby creating a monumental, though inadvertent, grammatical blunder.   *Id.* at 530-31.   Despite the grammatical issues, the Court noted that several Courts of Appeal had held that the "language was plain irrespective of these quirks and history" and that § 330 permitted that "fees may be awarded to attorneys for services rendered only to the extent they are payments to a professional person employed under § 327," but in contrast that several other Courts of Appeals had found that the errors made the section ambiguous.   *Id.* at 531; *see also Andrews & Kurth L.L.P. v. Family Snacks (In re Pro-Snax Distribs.)*, 157 F.3d 414, 425 (5th Cir. 1998), *overruled by*

---

[11] The version of § 330 that the Court reviewed was prior to the revisions in the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, 199 Stat. 23 (codified as amended in scattered sections of 11 U.S.C.).  However a quick review of the two versions of § 330(a)(1) demonstrate only minor revisions primarily concern the addition of specifically enumerated persons that may be compensated in connection with a bankruptcy case.

*Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*, 783 F.3d 266, 277 (5th Cir. 2015) (overruling the prospective analysis from *In re Pro-Snax* in favor of a "reasonable at the time" standard).   The Court reasoned that the grammatical issues did not render the statute ambiguous or that even though the use of "attorney" may amount to surplusage, it does not *per se* indicate ambiguity.   *Lamie*, 540 U.S. at 529-36.   A plain language reading of §§ 327 and 330, when read *in pari materia*, do permit an attorney to be compensated for work performed in a chapter 7, but subject to employment solely by the chapter 7 trustee as a limiting measure for preservation of the bankruptcy estate.   *Id.* at 537.   However, the Court distinguished a broad reading of § 330's limitations in chapter 7 from disallowing compensation to a debtor's attorneys in non-chapter 7 cases by specifically referencing § 330(a)(4)(B)'s provision of fees being payable to a debtor's attorney in chapters 12 and 13.   *Id.*  Given the "apparent sound functioning of the bankruptcy system under the plain meaning approach," the Court did not find that the purpose of an alternative canon of interpretation to, in effect, enlarge the construction of the statute comports with the "supremacy of the Legislature" and that it is "beyond [the Court's] province to rescue Congress from its drafting errors."   *Id.* at 537-38, 542 (citing to *Iselin v. United States*, 270 U.S. 245, 251 (1926), *United States v. Locke*, 471 U.S. 84, 95 (1985), and *United States v. Granderson*, 511 U.S. 39 (1994)).   Ultimately, the Court held that § 330(a)(1) does not permit a court to award compensation to an attorney from estate funds without the attorney's employment being authorized pursuant to § 327 and that in a chapter 7, the attorney "must be employed by the trustee *and* approved by the court."   *Id.* at 538-39 (emphasis added). In resolving the issue, the Court reasoned that, for better or worse, adherence to constitutional roles requires that the determination of intent from a statute must be limited to the plain meaning of the *text* alone.   *Id.* at 542.

The Fifth Circuit recently addressed the issue of compensation awards for professionals employed pursuant to § 328 in *Asarco, L.L.C. v. Barclays Capital, Inc. (In re Asarco, L.L.C.).* 702 F.3d 250 (5th Cir. 2012).  The issue before the Fifth Circuit involved the bankruptcy court's partial award of fees to a financial advisor employed, in accordance with § 327, by the debtor-in-possession in a chapter 11.  *Id.* at 253.  In reviewing the bankruptcy court's decision to award certain compensation while denying additional compensation, the Fifth Circuit contrasted the provisions of § 328 and § 330.  *Id.* at 257-61.  The Fifth Circuit, reiterating prior interpretations of § 328, declared that professionals employed under § 328 may be compensated on reasonable terms, but once those terms are set, the court "may not stray from them at the end of the engagement unless developments subsequent to the original approval that were incapable of being anticipated render the terms improvident."  *Id.* at 257.  However, professionals employed by a bankruptcy estate may also be employed pursuant to § 330.  *Id.* at 260; *see also Peele v. Cunningham (In re Texas Sec., Inc.)*, 218 F.3d 443 (5th Cir. 2000).  Relying on the *In re Texas Sec.* decision, the Fifth Circuit in *In re Asarco* distinguished the two sections as applying when the court approves compensation prior to the outset of the engagement under § 328 or does not pre-approve compensation and instead applies a reasonableness test under § 330.  *In re Asarco*, 702 F.3d at 260; *see also In re Texas Sec.*, 218 F.3d at 445.  In the matter before the Fifth Circuit, the professional had been employed under § 328, so the reasonableness test from § 330 was unwarranted, because the contractual arrangement approved by the bankruptcy court reigned.  *In re Asarco*, 702 F.3d at 268-69.

In addition to *In re Asarco*, our sister bankruptcy courts have discussed the issue of trustee employment of an attorney under a variety of similar situations on many occasions.  In *In re Jackson*, the court there reviewed a chapter 7 trustee's motion to employ his own law firm to

pursue certain intellectual property matters.  484 B.R. 141, 149-50 (Bankr. S.D. Tex. 2012).  The bankruptcy court, on a previous occasion, had announced certain factors to be taken into consideration when a trustee sought the court's approval of the employment of an attorney by the estate and applied these factors to the trustee's motion to employ.  *Id.* at 154-74; *see also In re Bechuck*, 472 B.R. 371, 375 (Bankr. S.D. Tex. 2012) (requiring that an application also include a discussion of the professional's past success and breadth of experience with the proposed tasks to be undertaken).  The *Jackson* court noted that a bankruptcy court enjoys "substantial discretion to grant an application to employ a professional for the estate."  *In re Jackson*, 484 B.R. at 154; *see also Arnes v. Boughton (in re Prudhomme)*, 43 F.3d 1000, 1003 (5th Cir. 1995); *In re Bigler, LP*, 422 B.R. 638, 643 (Bankr. S.D. Tex. 2010).  Ultimately, the court rejected the application by the trustee to employ the law firm, but emphasized that "the expertise and experience of the proposed attorney must be fully articulated and analyzed in order to fulfill the Trustee's fiduciary duties to the estate."  *In re Jackson*, 484 B.R. at 174-75; *see also In re Contractor Tech., Ltd.*, 2006 U.S. Dist. LEXIS 34466 (S.D. Tex. May 30, 2006) (discussing conflicts of interest with respect to potential employment of a law firm that had previously represented some of the creditors and the appropriateness of contingency fees arrangements for the proposed representation).  A fellow bankruptcy court recently decided a case where the debtor employed an attorney to pursue a personal injury cause of action pre-petition, but settlement occurred after the debtor had filed for chapter 13 bankruptcy.  *In re Hebert*, 2015 Bankr. LEXIS 3379 (Bankr. W.D. La. Oct. 5, 2015).  The debtors disclosed the personal injury claim on their schedules at the commencement of the bankruptcy case, and the confirmed plan offered one half of the net settlement to be paid to creditors.  *Id.* at *3-4.  However, the debtors had begun the case pre-petition with two different attorneys than the one that had negotiated the settlement, which was

approved by the court.  *Id.* at *4.  One of the two terminated attorneys and the attorney who negotiated the settlement signed an agreement to waive their fees.  *Id.* at *4-5.  However, the other terminated attorney sought to enforce a lien against the debtor to account for contingency work he had completed prior to termination, but had apparently completed without actually having been engaged by the debtor.  *Id.* at *5-6.  The *Hebert* court analyzed the issue, which partially relied upon Louisiana Rules of Professional Conduct, to determine whether the attorney had a viable claim, absent actual employment, against the debtor.  *Id.* at *9-14.  In *Hebert*, it came to the attention of the court that the attorney was acting, essentially, as a subcontractor, but the engagement letter from the law firm did not disclose any fee sharing arrangement and contemplated separate engagement of the subcontracting attorney.  *In re Hebert*, 2015 Bankr. LEXIS 3379, at *10-11.  Thus, the court was able to reason that under the Louisiana Rules of Professional Conduct, the subcontracting attorney was "not entitled to a contingency fee."  *Id.* at *11.  The attorney had also attempted to claim fees under a *quantum meruit* theory,[12] but despite the averment of the attorney, no evidence was submitted to support compensation being awarded under § 330, and the attempt was thus denied.  *Id.* at *12-14; *see also Lazzo v. Rose Hill Bank* (*In re Schupbach Invs., L.L.C.*), 2015 U.S. App. LEXIS 19175 (10th Cir. Nov. 3, 2015) (holding that employment pursuant to § 327 cannot be retroactively approved); *see generally In re Brown*, 40 B.R. 728 (Bankr. D. Conn. 1984) (finding that an attorney's failure to apply for employment in a chapter 13 case, which was ultimately converted to a chapter 11, resulted in the denial of the attorney's application to be employed, *nunc pro tunc*, and an order for the attorney to return all fees received).

---

[12] *Quantum Meruit*, Black's Law Dictionary (10th ed. 2014) (defined as "[t]he reasonable value of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship"); *see also* Ballentine's Law Dictionary (3rd ed. 1969).

The Fifth Circuit has held that a bankruptcy court has the discretion to approve retroactive employment of attorney for a chapter 11 debtor, but only under exceptional circumstances.  *In re Triangle Chems.*, 697 F.2d 1280, 1289 (5th Cir. 1983); *see also In re Lyons*, 439 B.R. 401 (Bankr. S.D. Tex. 2010).  The attorney in *Triangle Chems.* had neglected to seek the approval of the bankruptcy court to commence the role of debtor-in-possession's attorney in a chapter 11, wherein a debtor-in-possession acts as a trustee and is permitted to hire an attorney pursuant to §§ 327 and 1107, but had continued to perform to the benefit of the bankruptcy estate.  *In re Lyons*, 439 B.R. at 406-7 (citing to *In re Triangle Chems.*, 697 F.2d at 1282-90).  The Fifth Circuit was extremely narrow in its holding and explicitly stated that while they were permitting the *nunc pro tunc* approach under rare or exceptional circumstances, their holding should not be construed as "encourag[ing] any general non-observance of the contemplated pre-employment court approval."  *In re Triangle Chems.*, 697 F.2d at 1289; *see also In re Anderson*, 936 F.2d 199, 203-4 (5th Cir. 1991) (holding that an award of attorney's fees was reasonable despite the pre-employment partial payment, which was a violation of § 329 notwithstanding the attorney's contention that the payment were not attorney's fees, but a payment from his co-counsel, which, if persuasive, would have been violative of § 504 as well).

The Southern District of Texas Bankruptcy Local Rules ("***BLR***") provide for the employment of professionals via a *nunc pro tunc* application when approval of that professional's employment is sought more than 30 days after it commences.  BLR 2014-1(b)(2).  However, such retroactive employment must be made with the following explanations included with the application; "(A) An explanation of why the application was not filed earlier; (B) An explanation why the order authorizing employment is required *nunc pro tunc*; [and] (C) An explanation, to the best of the applicant's knowledge, how approval of the application may

prejudice any parties-in-interest." BLR 2014-1(b)(2)(A)-(C). The Local Rules require notice of the application be sent to all creditors, which must include negative notice language required by BLR 9013-1(b), and that there be an opportunity for a hearing prior to the approval of *nunc pro tunc* applications.

The Fifth Circuit has on several occasions interpreted what constitutes reasonable compensation in a request for attorney's fees. *In re Woerner*, 783 F.3d at 277 (overruling the "material benefit" standard in favor of a "reasonable at the time" standard for determining attorney's fees awards from *In re Pro-Snax*); *In re Pro-Snax Distribs.*, 157 F.3d at 414 (holding that compensation was due only for services that resulted in identifiable, tangible, and material benefit to the estate); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) (holding that courts must evaluate certain factors in determining an award of attorney's fees). The standard announced in *In re Woerner* uses the factors from § 330 as the basis for which compensation can be determined, but adds that the *Pro-Snax* approach is at odds with the plain language of § 330. *In re Woerner*, 783 F.3d at 272-77. The Fifth Circuit reasoned that the plain language of § 330 implies a prospective standard for the evaluation of services rendered that requires a court evaluate such services in light of what was "reasonable at the time." *Id.* at 276-77.

## IV.  Conclusions Of Law

### A.  Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. The Southern District of

Texas's standing "Order of Reference to Bankruptcy Judges," provides for the automatic referral of bankruptcy cases to bankruptcy courts. *In re: Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012). This is a core matter for the purpose of § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate." 28 U.S.C. § 157. The decision to grant or deny a settlement, which includes a decision on awarding compensation to a professional, is squarely one that involves the administration of an estate and the allowance or disallowance of exemptions from property of the estate. Therefore, jurisdiction is proper by the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold wherever "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity…" In its petition, Debtors designate their principal place of residence as Mission, Texas. Therefore, venue is proper.

**B. Constitutional Authority To Enter A Final Order**

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts. *Id.* The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters. *Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it

only rested in a state law counterclaim by the estate.  *Id.* at 2618.  The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19.  Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power.  *Id.* at 2620.  This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy.  *See* 28 U.S.C. § 157.  However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments.  *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court to evaluate a compromise by the Debtors, which includes provision for compensation being awarded to a professional, [ECF No. 37], a consented motion to employ special counsel, [ECF No. 57], and an application for compensation filed by the prospective special counsel, [ECF No. 58], all of which solely concern federal bankruptcy law.  *See* 11 U.S.C. §§ 327-330 (employment and compensation of professionals from a bankruptcy estate); *see also* Fed. R. Bankr. P. 9019(a) (procedural rules for determining the validity of a proposed compromise).  Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the matter at bar.

## C.  The Compromise, Application to Employ, Fee Application, and the Law

*1. Is the Compromise Proper Under the Cajun Electric Test?*

This Court recently reviewed a proposed settlement that was filed pursuant to a stipulation to a motion to dismiss and applied factors from *Cajun Electric*, *In re Foster Mortgage Corp.*, and *In re Roqumore*.  *In re Smith*, 2015 Bankr. LEXIS 3959 (Bankr. S.D. Tex. Nov. 19, 2015); *see also In re Foster Mortgage Corp.*, 63 F.3d at 917; *Cajun Elec.*, 119 F.3d at 356; *In re Roqumore*, 393 B.R. at 480.  The application of the *Cajun Electric* factors is to determine if the Compromise is "fair, equitable, and in the best interest of the estate."  *In re Jackson Brewing Co.*, 624 F.2d at 602 (citing to *TMT Trailer*, 390 U.S. at 424-25).  As discussed above, this Court will apply those factors to the Compromise to determine if it is proper, irrespective of the attorney's fees payable under the settlement and then separately address the issue of employment and compensation.

The first *Cajun Electric* factor requires a prospective determination of the probability of success in the litigation, given the circumstances, to determine if the proposed settlement is fair, equitable, and in the best interest of the estate.  *Cajun Elec.*, 119 F.3d at 356.  Here, the Joint Debtor is purported to have accepted the settlement, without authorization of this Court, and Schmidt is looking for post-acceptance ratification.  To support the Compromise, Schmidt states that the law firm representing the Joint Debtor advised "that success is risky" due to the nature of the issues to be litigated in the case.  [ECF No. 37 ¶ 10].  At the Hearing, Schmidt provided additional details regarding the Compromise: (1) there were approximately 57,000 claims; (2) each claim was evaluated on a "point" system; and (3) the class action, which was multi-district litigation, was heard by the United States District Court for the Southern District of West Virginia and had special masters appointed for the case.  The description of the settlement, as made by Schmidt at the Hearing and in his pleadings, is one that appears to have been carefully

managed by the court such that each litigant received an appropriate, yet fair recompense for their alleged injury.  Given the breadth of the class, the "point" system, which bases its analysis of six different factors, provides for a fair resolution based on the merit of each individual claim. *See* Ex. 2 at 4-5.  Based on the foregoing, this Court determines that there has been success in the class action litigation, the process was one to determine a fair settlement for each of the litigants, and the settlement is in the best interest of the estate, as it provides for a distribution to creditors where there otherwise would be none.  Therefore, this Court finds that the first *Cajun Elec.* factor has been met by the Compromise.

The second *Cajun Electric* factor is a determination on the "complexity and likely duration of the litigation and any attendant expense, inconvenience and delay."  119 F.3d at 356. Schmidt's motion provides a bare scintilla of support in the Compromise to give weight towards a finding, under this factor, that the proposed settlement is the most expeditious way to resolve the matter without exorbitant expense, inconvenience, and delay.  Schmidt states that "[l]itigation would be lengthy [and] [a]n appeal would be likely."  [ECF No. 37 ¶ 11].  Schmidt further states that he anticipates that a successful claim on behalf of the Joint Debtor would result in a collectible claim, but that "the length and uncertainty of litigation is a burden to [Schmidt] and this Estate."  *Id.* ¶ 12.  However, the arguments made by Schmidt at the Hearing provide a much greater degree of details on the complexity of the class action litigation against American Medical Systems.  Joint Debtor retained Ms. Hornsby's firm in 2012 and only reached settlement in early 2015.  However, it is unlikely that the Joint Debtor, having already joined in the class action litigation, would be able to pursue a claim individually and, assuming *arguendo* that the Joint Debtor could still pursue an individual claim, it would come at great expense.  Accordingly, this Court determines that the second *Cajun Elec.* factor has been met, as the litigation has

indeed proven to be complex and rather lengthy, and seeking to avoid the outcome of the class action lawsuit would require significant additional expenses, inconvenience, and delay.

The third *Cajun Electric* factor is a catchall analysis on the overall wisdom of the compromise to determine if it is fair, equitable, and in the best interests of the estate.  119 F.3d at 356.  However, this factor has been split into two separate considerations: (1) "[w]hether the compromise serves the paramount interest of creditors with proper deference to their reasonable views" and (2) "[t]he extent to which the settlement is truly the product of arms-length bargaining and not of fraud or collusion."  *In re Roqumore*, 393 B.R. at 480 (citing to *In re Cajun Elec. Power Coop.*, 119 F.3d at 356, and *In re Foster Mortgage Corp.*, 63 F.3d at 917).  On the first consideration, the Compromise certainly serves the paramount interest of creditors, due to the transition of the bankruptcy from a "no asset estate" case to an "asset" case by virtue of the assets provided by the Compromise.  Furthermore, the Compromise is also aligned with the reasonable views of the creditors in the sense that the settlement would permit a dividend to be paid and, absent a secured claim, there would otherwise be no recourse available.  For the second consideration, the Compromise provides nothing to support a finding at all on potential fraud or collusion in the underlying settlement.  Accordingly, this Court finds that the Compromise is in the best interests of the estate and the creditors, and it is, indeed, an arms-length bargain between the class action defendant and Joint Debtor.  Therefore, this Court finds that the third *Cajun Elec.* factor has been met.

In addition to the foregoing factors, this Court will also look at the provisions of § 504 to determine if the fees are permissible.  [ECF No. 37 at 4, 57 ¶ 14, 58 ¶¶ 3, 10].  The Compromise's settlement statement provides various deductions from the overall settlement of $87,968.00.  [ECF No. 37 at 4, 58 ¶¶ 3, 10].  Forty percent of the settlement is assigned to

attorney's fees and four percent is being deducted from that amount for an MDL fee, which is not an issue *per se*. [ECF No. 37 at 4, 58 ¶¶ 3, 10]. However, the statement includes five different deductions for case expenses: the MDL fee, Common Expenses, and expenses for three different law firms. [ECF No. 37 at 4]. The inclusion of expenses for three different law firms raises significant issues under § 504, which prohibits sharing compensation or reimbursement with another person. *See also* Fed. R. Bankr. P. 2016. Notably, in the Fee Application, the additional law firms are *missing* from the detailed expenses without any reduction in expenses. *Compare* [ECF No. 37 at 4] *with* [ECF No. 58 ¶¶ 3, 10]. On its face, the settlement appears to contemplate the sharing of administrative expenses between unemployed and non-qualified persons, which is a direct violation of § 504(a) and Fed. R. Bankr. P. 2016. *See* [ECF No. 37 at 4]. Therefore, as the portion of the expenses attributable to Les Murphy Law Firm, G.P. and Tracey Law Firm are not permissible under the Code, the itemized expenses attributable to the law firms that are non-approved special counsel cannot be granted. The issue of Clark, Love & Hutson, G.P.'s employment is discussed separately. Thus those expenses may be deemed appropriate.

The Compromise, on the whole, appears to meet the requirements of the *Cajun Elec.* test, as each of the factors has been met. Accordingly, this Court, having previously conditionally approved the Compromise, holds that the Compromise is in the best interest of the bankruptcy estate on the whole, but must address the issue of the attorney's fees separately.

2. *Is the Application to Employ Proper and Can the Fee Application be Granted Pursuant to Lamie and the Code?*

Having determined that the Compromise is appropriate, this Court must now determine whether the Application to Employ is proper, and if so, whether the Fee Application is

reasonable and can be granted.  As discussed above, § 327 provides the standard for employment of professionals by the trustee in a bankruptcy case.   Additionally, § 330 provides that compensation may be paid to professional persons who are employed under § 327, but the Code clearly sets an order of employment as a prerequisite for compensation to be awarded.  *Compare* § 330(a)(1) *with* § 327 *and Lamie*, 540 U.S. at 538-39.  Here, the docket reveals only a single application to employ, which was filed by Schmidt in order to employ himself, having been filed in Debtors' case prior to the Hearing.  [ECF No. 33].  During his tenure, Romo did not file any applications to employ any attorneys in conjunction with Joint Debtor's potential claim. Furthermore, prior to the Hearing, a *nunc pro tunc* application had not been filed by Schmidt or any other attorney consistent with BLR 2014-1(b)(2).

Subsequent to the hearing, Ms. Hornsby, with the consent of Schmidt, filed the Application to Employ on a *nunc pro tunc* basis.  Thus, the Application to Employ must be evaluated to determine if it is in accordance with Fed. R. Bankr. P. 2014 and BLR 2014-1.  Here, the Application to Employ was filed with the consent of Schmidt, in his capacity as the chapter 7 trustee, and therefore meets the threshold requirements of Rule 2014.  The analysis does not end there, for Rule 2014 also requires a statement from the person to be employed on various subjects, which the Application to Employ does contain.  As an initial stage in the analysis, the Application to Employ seems to meet the requirements of Rule 2014 for the employment of a professional pursuant to § 327.  Once again, the analysis does not end there, as the Application to Employ is made on a *nunc pro tunc* basis and this Court must therefore continue the analysis to BLR 2014-1.  Therein lies where the Application to Employ begins to vexatiously deviate from what is required based on what is presented by Ms. Hornsby on behalf of the estate.  To say that this comparison is unsettling is an understatement; gross negligence or willful disregard of the

Local Rules and this Court's procedures, of which Ms. Hornsby was plainly cautioned regarding her necessary compliance, is a more apropos description. Either way, something foul is indeed afoot in her actions. To put it even more plainly, the representations made to this Court by Ms. Hornsby are potentially violative of Rule 9011.[13]   BLR 2014-1 is plainly stated, but for some heretofore unexplained reason, Ms. Hornsby chose to blatantly disregard its requirements after being plainly instructed by this Court to comply. BLR 2014-1 requires an explanation of why the application is untimely; why the employment is required *nunc pro tunc*; and how an approval may or may not prejudice parties-in-interest. The Application to Employ does not contain one iota of explanation on the untimeliness or potential prejudice to parties-in-interest, and certainly does not give a hint as to why retroactive employment is warranted. Furthermore, BLR 2014-1 also requires notice to all creditors in the case, which the Application to Employ purports, on the one hand, to comply with but patently fails to deliver. Apparently, Ms. Hornsby, on behalf of the estate, "respectfully" requests that this Court divine the facts necessary to determine which creditors she has purportedly noticed. This Court declines to inhale those vapors. However, the saga of deficiencies continues, for the failure of Ms. Hornsby to comply with the Local Rules does not stop with BLR 2014-1 – the Application to Employ also pretermits this Court's procedures for the employment of professionals by failing to include the required table. Based on the foregoing, the Application to Employ is *not* in compliance with BLR 2014-1 and this Court's rules, as it fails to state any reason, even a deficient one, for why the application should be retroactively approved. Accordingly, this Court holds that the Application to Employ be **DENIED**.

---

[13] Fed. R. Bankr. P. 9011(b) requires that representations made to the court by an attorney is a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances … the claims, defenses, and other legal contentions therein are warranted by existing law."

Having concluded that the attorney(s) involved in the class action claim by Joint Debtor were not properly employed pursuant to § 327 and the pending Application to Employ *nunc pro tunc* is improper, there is no need for this Court to reach the issue of the reasonability of their fees. The Code and *Lamie* are extremely clear on this point - § 330(a)(1) does not permit this Court to award compensation to attorneys that have not been properly employed.[14] Furthermore, the Code is also clear that the employment of a professional on behalf of a debtor-in-possession or the trustee is a matter that should be put before the court prior to the engagement beginning, and only "under rare or exceptional circumstances" should retroactive employment be approved. §§ 327(a)[15] & 330(a); *In re Triangle Chems.*, 697 F.2d at 1289. The Application to Employ woefully failed to meet that standard. The effect of the denial of the Application to Employ is that the Fee Application is **MOOT** and must be **STRICKEN**.

Accordingly, the Compromise's provision for the payment of attorney's fees, as disclosed in the settlement statement, is not a permissible deduction from the gross settlement awarded to the Joint Debtor, as the attorney(s) involved are not properly employed pursuant to § 327. The conditional approval of Compromise is hereby modified to be fully paid out to the bankruptcy estate, less Joint Debtor's exempted portion, to be distributed to the unsecured creditors that have filed Allowed claims, before the excess is returned to the Debtors.

### V. Conclusion

For the foregoing reasons, this Court finds that the Compromise is "fair, equitable, and in

---

[14] "After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to … a professional person *employed under section 327* … reasonable compensation for actual, necessary services rendered by the … professional person, or attorney and … reimbursement for actual, necessary expenses." § 330(a)(1)(A)-(B) (emphasis added).

[15] "Except as otherwise provided in this section, the trustee*, with the court's approval*, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (emphasis added).

the best interest of the estate," subject to the condition that the provision for attorney's fees is impermissible, as the attorney attempting to deduct fees from the gross settlement was not properly employed under § 327 and therefore cannot be awarded compensation under § 330(a). The Bankruptcy Rules, BLRs, and Local Court rules are in place for many reasons, including allowing parties to rely on standardized procedures rather than constantly feeling the need to shoot from the hip.  Perhaps even more importantly, this Court is not a mind reader, nor are creditors all-seeing eyes.  It is therefore ORDERED that the pending Application to Employ be hereby **DENIED** and that the Fee Application is **MOOT** and **STRICKEN**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 01/27/2016.

Eduardo V. Rodriguez
United States Bankruptcy Judge